COURT OF APPEALS OF VIRGINIA

Present:  Judges Huff,* Ortiz and Raphael
Argued at Norfolk, Virginia


ELISABETH ARNOLD

v.      Record No. 2048-23-1

CITY OF NORFOLK

OPINION BY
JUDGE DANIEL E. ORTIZ
JANUARY 7, 2025

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

Matthias J. Kaseorg (Joel White; Pierce Jewett, PLLC, on briefs), for
appellant.

Kristopher R. McClellan, Assistant City Attorney (Andrew Fox,
Deputy City Attorney, on brief), for appellee.


Elisabeth Arnold alleges that she was terminated from her employment at the City of

Norfolk after complaining about potential and ongoing fraudulent claims by City employees.

She brought this retaliation action under the Virginia Fraud Against Taxpayers Act ("VFATA"),

Code §§ 8.01-216.1 through 8.01-216.19.  The trial court sustained the City's demurrer, finding

that Arnold failed to allege that she engaged in protected activity under the VFATA and

therefore failed to state a claim for retaliation.  Because the trial court erred in sustaining the

demurrer with respect to some of Arnold's allegations, we affirm in part and reverse in part.

* Judge Huff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2024.

PUBLISHED

BACKGROUND

I. Factual Allegations[1]

Elisabeth Arnold was an employee of the City of Norfolk for roughly twenty years, beginning in 2001. During her tenure, her performance was "immaculate," earning her several promotions. In 2017, Arnold was promoted to programs manager. Her responsibilities included: "budgeting, accounting, and payroll for the operations division of the City's Utilities Department; overseeing large projects for the operations division; and managing a storehouse that procured and provided materials for the Utilities Department."

Beginning in late 2020 and continuing through June 2021, however, Arnold was pressured by City employees to take actions that she believed would "cause false reports to be generated regarding transfers of City property and/or money." Specifically, Arnold alleges five incidents of City misconduct.

First, around November 2020, Arnold alleges that she was pressured by Bob Carteris (Assistant Director of City Utilities) to issue tools from the storehouse in whatever quantities requested by field employees. This would have been in contravention of the City's internal policy limiting employees to one item per visit. Arnold alleges that, had the storehouse complied with this demand "without Arnold's knowledge," it would have "caused Arnold to issue a false report regarding the number of tools issued and costs incurred." Arnold "notified the then-operations manager, Mary Keough," about this demand "in an effort to prevent fraud and/or waste of City funds and avoid filing a false report."

---

[1] When reviewing a trial court's decision sustaining a demurrer, an appellate court "accepts as true all facts properly pled" in the complaint, "as well as reasonable inferences from those facts." *Steward v. Holland Family Props., LLC*, 284 Va. 282, 286 (2012).

Second, in January 2021,[2] Arnold alleges that she was pressured by Keough to order navy-blue uniforms that would have contravened relevant safety regulations. Because they violated regulations, the navy-blue uniforms had been "entirely removed from the Utility Department's inventory system." Arnold alleges that, had she complied with Keough's request, it "would have required Arnold to order the equipment under a false designation, thereby creating a false report." Arnold "objected" to Keough's request and provided her with the City's updated uniform policy. Nonetheless, Keough "continued to demand" that Arnold purchase the navy-blue uniforms.

Third, in early 2021, Arnold learned that City employees were adding unauthorized "special pay" to their time sheets. Some employees were adding 30 minutes to their time sheets "for receiving calls regardless of time spent on the call." Others were double-counting time by adding call time on top of their clock time. In March 2021, Arnold emailed Operations Manager Larry Grant (her direct supervisor), as well as David Speer (Assistant Superintendent of Wastewater), to advise them about these violations.

Fourth, in June 2021, Arnold alleges that Sid Lowe (Assistant Superintendent of Water Distribution) asked Arnold "to transfer a large volume of damaged and obsolete materials . . . into the storehouses" and to classify these materials as "stock." A "stock" classification represents that materials are in "new condition." Had Arnold done so, Lowe's department would have received an $80,000 credit into its operating budget. Arnold refused to create the necessary documentation, reported Lowe's actions to her supervisor, and filed a formal grievance against Lowe.

---

[2] The complaint states "January 2020," but this appears to be a scrivener's error. Earlier, the complaint alleges that the City's improper actions generally began in "late 2020." And this section of the complaint refers to actions occurring in "November 2020" having preceded in time the January incident.

Fifth, "a few weeks after" Lowe's classification request, Lowe and Speer "demanded that Arnold issue water meters while the City's financial system was down and therefore unable to properly log such a transaction." In such circumstances, the storehouse could only issue materials required for emergency repairs, and "proper documentation of emergency need must be provided by the requesting party." Speer and Lowe wanted Arnold to issue the meters without documentation in order to "cover-up" various failures on their part. Had Arnold complied, she would have had "to create a written report that was materially false in that it would have lacked the corresponding written authorization required by City policy for emergency need transfers." Arnold refused to provide the meters and "objected" to the request.

Following these instances, Arnold alleges that she experienced "harassment" and "retaliatory response[s]" from her fellow employees. Specifically, "Lowe and Speer openly harassed Arnold in front [sic] her store employees." Another employee "directed his staff to move a large dumpster from its permanent location and drop it on top of the storehouse parking spaces."

Soon after, on June 21, 2021, Arnold met with Mary Keough to discuss her experiences. Keough "declined to take meaningful action" and informed Arnold: "while you have processes, we need to make sure that they are not getting in the way of supporting operations, which is the reason we're all here." Arnold responded, "I would rather resign my position than be fired for breaking written policies."

On June 29, "Arnold submitted a grievance to the City detailing many of her experiences." On June 30, Arnold met with Keough again, who "apologized for having dismissed Arnold's concerns." Arnold "expressed relief and advised Keough that she was rescinding her desire to resign." She "memorialized this recension in writing" on July 2.

- 4 -

Notwithstanding that retraction and Arnold's "protest[]," on July 8, the City told Arnold that it was "'accepting' her previous resignation," ending her employment with the City. Arnold subsequently brought this action.

## II. Procedural History

Arnold alleged only one count in her complaint, retaliation under the VFATA, Code § 8.01-216.8. The City demurred.[3]

Code § 8.01-216.8 states, as relevant here:

> Any employee . . . shall be entitled to all relief necessary . . . , if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this article or other efforts to stop one or more violations of this article.

The trial court first expounded on "an action under this article," acknowledging that the Act

> creates an action by which the Attorney General may recover civil penalties and damages against persons who commit the types of fraud proscribed in § 8.01-216.3, as well as an action brought by a private person who may be entitled to a percent of the proceeds of the action or the settlement of the claim—a so-called qui tam action.

The trial court also acknowledged that an employee alleging retaliation must allege acts that "constitute protected activity" to state a claim. The court defined "protected activity" as "acts done in furtherance of a VFATA action," including "assist[ing] the City or the Commonwealth in bringing a false claim action" or "pursu[ing] a qui tam action."

Analyzing Arnold's claim, the court first held that, under the VFATA, Arnold must have alleged a "predicate VFATA violation" by City employees. The court considered "whether the

---

[3] The trial court overruled the City's plea in bar based on sovereign immunity. That ruling is not before us, and we offer no opinion on its merits.

- 5 -

various incidents that [Arnold] described relate[d] to anybody filing a false claim for payment by the City or creating a false record to get a false claim paid by the City." The court found that only "one of the five activities that [Arnold] describe[d] . . . , the complaint about employees who were paid twice for the same work," could "potentially form the basis for a qui tam action."

Nonetheless, in the trial court's estimation, because Arnold failed to allege that "she had any plans to pursue a qui tam action, that she was investigating matters that reasonably could lead to a viable suit, or that she was planning to assist the City or the Commonwealth in bringing a false claim action," Arnold "fail[ed] to identify a predicate VFATA violation and for that reason fail[ed] to state a claim for relief." Thus, although the court also found that the City's purported acceptance of Arnold's resignation was "a retaliatory action," Arnold failed to allege that any adverse employment action against her was "causally linked to" protected activity.

Arnold filed a motion for reconsideration and written objections to the order sustaining the City's demurrer. In sum, Arnold objected to aspects of the trial court's analysis limiting the scope of protected activity to only "acts done in furtherance of a VFATA action" because, she argued, the VFATA also protects acts done in furtherance of "other efforts to stop one or more violations." Code § 8.01-216.8. Arnold further objected to the trial court's finding that "the Complaint fail[ed] to identify a predicate VFATA violation."

The trial court denied the motion to reconsider, finding that "[a]ll of the grounds raised as points for reconsideration, were carefully considered when the [c]ourt decided the demurrer" and did not "support changing its decision." Arnold appealed.

STANDARD OF REVIEW

A demurrer tests "the legal sufficiency of the facts properly alleged in the challenged pleading and the inferences fairly drawn from those facts, all of which are accepted as true." *Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 245 (2012). "Because the decision

- 6 -

whether to grant a demurrer involves issues of law, we review the circuit court's judgment de novo." *Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 395 (2006).

ANALYSIS

On appeal, Arnold's assignments of error raise three fundamental issues: (1) whether the trial court erred by limiting the scope of protected activity under the VFATA's retaliation provision to acts "done in furtherance of a VFATA action"; (2) whether Arnold sufficiently pleaded that she engaged in protected activity; and (3) if so, whether Arnold otherwise sufficiently pleaded the remaining elements of retaliation. Neither this Court nor our Supreme Court has construed Code § 8.01-216.8 to determine the scope of protected "lawful acts." For the reasons that follow, we hold that the trial court erred because Arnold sufficiently pleaded that she engaged in protected activity and stated a claim for retaliation under the VFATA.

I. The trial court erred when defining the scope of protected activity under Code § 8.01-216.8.

A. Structure of the VFATA

The VFATA was enacted as a state analog to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. *See Lewis v. City of Alexandria*, 287 Va. 474, 479 n.4 (2014). At bottom, the VFATA prohibits any person from presenting or making a false claim for payment to a state or local government entity, and thereby defrauding Virginia taxpayers. *See* Code § 8.01-216.3. Section 8.01-216.3 specifically prohibits nine types of conduct. As relevant to this case, it states:

> Any person who:
>
> 1. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> 2. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . . .
>
> 7. Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Commonwealth and, intending

- 7 -

to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true; [or]

. . . .

9. Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Commonwealth;

shall be liable to the Commonwealth . . . .

Code § 8.01-216.3(A).[4]  To put it simply, a "central question" in all false claims cases is "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc,'" or treasury.  *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (quoting *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003)).

If someone violates the VFATA, the VFATA provides two causes of action that a private citizen may bring: (1) a "qui tam" action, in which a person directly asserts a violation of § 8.01-216.3 on behalf of both herself *and* the Commonwealth, *see* Code § 8.01-216.5; or (2) a whistleblower/retaliation action if a state or local government employee suffers adverse employment consequences because she engaged in certain protected activities in an attempt to stop the violation, *see* Code § 8.01-216.8.

In this case, Arnold brings only a retaliation cause of action under Code § 8.01-216.8. The trial court sustained the City's demurrer based solely on its finding that Arnold failed to

---

[4] "Commonwealth" under the VFATA means not only the Commonwealth of Virginia and its agencies, but also any of its "political subdivision[s]."  Code § 8.01-216.2.  "Claim" means "any request or demand . . . for money or property . . . that . . . is presented to an officer, employee, or agent of the Commonwealth."  *Id*.

allege protected "lawful acts" under the retaliation provision. We next examine the scope of relief provided in Code § 8.01-216.8.

### B. Scope of Protected Activity Under Code § 8.01-216.8

Code § 8.01-216.8 protects certain "lawful acts" taken by Commonwealth or local government employees to stop a VFATA violation, and is worth restating in relevant part here:

> Any employee . . . shall be entitled to all relief necessary . . . , if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this article *or other efforts* to stop one or more violations of this article.

Code § 8.01-216.8 (emphasis added). "Employee" means any employee or officer of the Commonwealth or its political subdivisions. Code § 8.01-216.2.

Virginia appellate courts have not yet construed the scope of protected "lawful acts" under the VFATA's retaliation provision. In *Lewis v. City of Alexandria*, our Supreme Court noted that the relief provided in Code § 8.01-216.8 is identical to its analogue in the FCA. *See* 287 Va. at 479 n.4; *compare* Code § 8.01-216.8, *with* 31 U.S.C. § 3730(h)(1)-(3). The Court accordingly stated that federal FCA cases "provide guidance for our review on appeal." *Lewis*, 287 Va. at 479 n.4; *see also Reedy v. Commonwealth*, 77 Va. App. 81, 103 n.11 (2023) ("[F]ederal court decisions can be considered persuasive authority for this Court . . . ."). Justice Mims in concurrence further emphasized that amendments to § 8.01-216.8, close on the heels of identical FCA amendments, "indicate[d] that the General Assembly intended state courts to construe the [VFATA] as the federal courts had then construed the [FCA]." *Lewis*, 287 Va. at 487 (Mims, J., concurring).

Under the FCA, to establish a prima facie case of retaliation, an employee must allege that: (1) she engaged in protected activity; (2) the employer knew about the activity; and (3) the employer retaliated against her in response. *Grant*, 912 F.3d at 200; *accord United States ex rel.*

- 9 -

*Reed v. Keypoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019). In this case, the trial court dismissed Arnold's claim based solely on the first element, finding that Arnold did not allege protected activity.

To understand the scope of "protected activity" under the VFATA, it is instructive to examine the history of amendments to it and the FCA. Prior to 2009, the FCA confined protected activity only to "measures taken in furtherance of" a qui tam suit. *Grant*, 912 F.3d at 200. But, in 2010, Congress amended the FCA to "broaden[] the scope of protected activity." *Id.* at 201. Today, the FCA covers not only acts done "in furtherance of" a qui tam suit, but also "*other efforts to stop*" violations of the acts, 31 U.S.C. § 3730(h)(1) (emphasis added); the VFATA was amended to add identical language in 2012. 2012 Acts ch. 479; Code § 8.01-216.8. Thus, the possibility of qui tam litigation is no longer a strict requirement to state a claim for retaliation under either statute because an employee may also allege "efforts to stop" a VFATA or FCA violation, "such as reporting suspected misconduct to internal supervisors." *Halasa v. ITT Educ. Servs.*, 690 F.3d 844, 847-48 (4th Cir. 2012); *see also Grant*, 912 F.3d at 201 ("Where Congress expands the scope of activity protected by a statute, we cannot restrict ourselves to applying a narrower old standard that the expansion was intended to eschew."); *Reed*, 923 F.3d at 766.[5] "To put it simply, the focus of the second prong is preventative—stopping

---

[5] Only the First Circuit still cabins the definition of "protected activity" to "activities that reasonably could lead to an FCA action." *See United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 59 (1st Cir. 2017) (quoting *Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 237 (1st Cir. 2004)). But even the First Circuit in *Booker* acknowledged the 2009/2010 amendments to the FCA and held that its definition covers actions that "might not be taken in direct furtherance of an actual lawsuit" but could lead to a lawsuit down the line, like "internal reporting or objecting to employer directives." *See id.* at 59 n.8. Thus, while the First Circuit nominally retained its pre-2009 test, it simply incorporated "other efforts" into its already-existing definition, rendering its approach functionally the same as those of other circuits.

'violations'—while the first prong is reactive to an (alleged) actual violation of the statute." *Singletary v. Howard Univ.*, 939 F.3d 287, 296 (D.C. Cir. 2019).

In this case, Arnold is correct that the trial court erred in its interpretation of protected activity under the VFATA. In its opinion sustaining the demurrer, although the court quoted the retaliation provision in full, it analyzed Arnold's claim only under the first prong, examining whether Arnold "intended to pursue or assist on" a qui tam action. The court found that Arnold's actions did not "constitute protected activity" because Arnold did not allege "that she had any plans to pursue a qui tam action, that she was investigating matters that reasonably could lead to a viable suit, or that she was planning to assist the City or the Commonwealth in bringing such a false claim action." Although the court correctly noted that federal FCA cases provide guidance, it relied on *pre*-2009-amendment federal cases to support its construction of protected activity. Thus, the trial court failed to effectuate the will of the General Assembly when it "appl[ied] a narrower old standard that the [statute's] expansion was intended to eschew."[6] *Grant*, 912 F.3d at 201.

In sum, following the 2012 amendment to the VFATA, Code § 8.01-216.8 protects not only "lawful acts" done "in furtherance of" a qui tam action, but also acts done "in furtherance of . . . *other efforts* to stop one or more [VFATA] violations." In this case, the trial court erred by applying a pre-amendment construction of the VFATA's retaliation provision. We turn next to our de novo review of Arnold's allegations under the proper standard.

---

[6] In the trial court's one-paragraph order denying Arnold's motion for reconsideration, the court again provided a cursory reference to the "other efforts" prong, stating, "The Complaint fails to allege any acts by Plaintiff done in furtherance of an action pursuant to the VFATA *or in an effort to stop* one or more violations of the VFATA . . . ." (Emphasis added). But the court made clear that its order denying the motion for reconsideration rested on the same grounds as its original opinion sustaining the demurrer, finding that the motion contained "no grounds therein to support changing its decision" and that "[a]ll of the grounds raised as points for reconsideration[] were carefully considered when the [c]ourt decided the demurrer."

II. Arnold sufficiently pleaded, in part, that she engaged in protected activity.

Although the trial court erred in its construction of Code § 8.01-216.8, the next question is whether its judgment should nevertheless be affirmed because Arnold failed to sufficiently plead that she engaged in protected activity under the VFATA.

A. Pleading Standard

Because neither this Court nor our Supreme Court has construed the scope of protected activity under the VFATA's retaliation provision, Virginia appellate courts also have never identified the proper standard for pleading "lawful acts done by the employee . . . in furtherance of . . . other efforts to stop one or more violations of [the VFATA]." Code § 8.01-216.8. In *United States ex rel. Grant v. United Airlines Inc.*, the Fourth Circuit set forth its standard under the FCA. *See* 912 F.3d at 201.

In the Fourth Circuit, to successfully plead protected activity, the employee must allege "an objectively reasonable belief that the employer is violating, or soon will violate the FCA." *Id.* Specifically, "[a] belief is objectively reasonable when the plaintiff alleges facts sufficient to show that he believed his employer was violating the FCA, that this belief was reasonable, that he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA." *Id.* at 201-02. At least the D.C., Ninth, Eighth, Seventh, Sixth, and Second Circuits, and several federal district courts, have adopted either *Grant* or a similar objective-reasonableness analysis.[7] Additionally, while a plaintiff bringing a direct qui tam

---

[7] *See Singletary*, 939 F.3d at 296 (applying the *Grant* test); *United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 908 (9th Cir. 2017) (requiring an "objectively reasonable, good faith belief" of an FCA violation); *Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 933 (8th Cir. 2002) (allowing for an employee's "objectively reasonable belief" that "he was acting to prevent" fraud to constitute "protected activity"); *United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 715 (7th Cir. 2014) ("[T]he employee must undertake the protected conduct with the actual and reasonable belief 'that the employer is committing fraud against the government.'" (quoting *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004))); *Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 399 (6th Cir. 2015)

action under the FCA is subject to heightened requirements for pleading fraud, a plaintiff alleging retaliation need only satisfy basic notice-pleading requirements. *See id.* at 200 (citing Fed. R. Civ. P. 8(a), 9(b)).

As we noted above, the relief provided in Code § 8.01-216.8 is identical to the relief provided in the FCA's retaliation provision. Additionally, our Supreme Court has instructed that, in reviewing claims under § 8.01-216.8, federal caselaw "provide[s] guidance."[8] *Lewis*, 287 Va. at 479 n.4. We see no reason to deviate from the weight of this federal caselaw and thereby subject Virginians to a different standard when pleading identical statutory language under the VFATA. We accordingly adopt the Fourth Circuit's *Grant* test into our review of whether a claimant has sufficiently pleaded protected activity in a retaliation action under Code § 8.01-216.8.

## B. Arnold's Complaint

Applying *Grant* to this case, the question presented is whether (1) Arnold "alleges facts sufficient to show that [s]he believed [her] employer was violating" the VFATA, (2) "that this

---

(confirming that the "reasonable belief" requirement set forth in *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508 (6th Cir. 2000), "survives the amendment" to the FCA); *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 96 (2d Cir. 2017) (analyzing whether efforts "reasonably could be expected to prevent the submission of a false claim"); *e.g.*, *Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 640-41 (S.D. Tex. 2019) ("[T]he employee's actions must be motivated by a 'good faith' and objectively reasonable belief—i.e., 'a reasonable employee in the same or similar circumstances might believe'—that her 'employer is committing fraud against the government.'" (quoting *United States ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 604-05 (S.D. Tex. 2012))); *Armstrong v. Arcanum Grp. Inc.*, No. 16-CV-1015, 2017 U.S. Dist. LEXIS 156346, at *12 (D. Colo. Sept. 25, 2017) (applying Fourth and Sixth Circuit tests).

[8] The *Lewis* Court also found "guidance in cases addressing other statutory schemes containing anti-retaliatory relief," such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17. 287 Va. at 479 n.4. Federal courts construing Title VII's anti-retaliation provision have similarly required a claimant to plead an objectively reasonable belief that an employer's opposed conduct violated Title VII. *See, e.g.*, *Reznik v. Incontact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021); *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006); *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013).

- 13 -

belief was reasonable," (3) "that [s]he took action based on that belief," and (4) "that [her] actions were designed to stop one or more violations of" the VFATA. *Grant*, 912 F.3d at 201-02. In other words, Arnold must allege both a reasonable belief of a predicate VFATA violation under Code § 8.01-216.3 and that she took action to stop that violation. Additionally, because the aim of Code § 8.01-216.8's second prong is preventative, it is sufficient for Arnold to allege a reasonable belief that the City "soon will violate" the VFATA; she need not allege an already-existing violation. *Id.* at 201.

Arnold alleges five instances of conduct that she argues demonstrate both predicate VFATA violations by the City and actions to stop them. We examine each in chronological order, the same way they are presented in the complaint.

### 1. Issuance of Tools—Insufficiently Pleaded

Arnold first argues that Carteris's demand to issue tools in whatever quantities City employees requested would have forced her to "make[] or deliver[] [a] receipt without completely knowing that the information on the receipt is true" and "cause[] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth" in contravention of Code § 8.01-216.3(A)(7) and (9). Arnold argues that, because the City had a one-tool policy in place, *if* she had complied with the demand "while also abiding by the one-tool policy, she would have been forced to create . . . documents falsely certifying that only one of each item was charged to the appropriate City department's operating budget." She also claims that, *if* "the storehouse [had] complied with Carteris's demand without Arnold's knowledge, it would have caused Arnold to issue a false report regarding the number of tools issued and costs incurred."

Both the City on brief and the trial court in its opinion argue that *Atchariyakornchai v. Frederick County Sanitation Authority*, No. 5:18-cv-00036, 2018 U.S. Dist. LEXIS 168897

- 14 -

(W.D. Va. Sept. 30, 2018), is generally applicable to Arnold's complaint. In *Atchariyakornchai*, plaintiff worked for the Frederick County Sanitation Authority ("FCSA") at a water treatment plant. *Id.* at *2. The complaint alleged that FCSA was required by the Department of Environmental Quality ("DEQ") to take creek data samplings. *Id.* at *4. Plaintiff alleged that FCSA employees falsified one such sampling and that these falsified records "*may* have led to the avoidance of fines from the DEQ." *Id.* at *9 (emphasis added). The district court found that plaintiff failed to allege a "claim" under the VFATA because his argument was "speculative"; false internal records that merely *could* lead to regulatory fines were "not a request or demand for money or property from the Commonwealth," as required by Code § 8.01-216.3. *Id.* Accordingly, the court found that plaintiff failed to allege a predicate VFATA violation and thus failed to allege "protected activity." *Id.*

The City is correct that, in this instance, Arnold's allegations are "speculative." Arnold alleges that she would have issued a false report *if* the storehouse had issued excess quantities of tools "without [her] knowledge." But, even drawing inferences in Arnold's favor, these allegations do not establish that such a scenario in fact occurred or soon would occur—she merely alleges that tool issuance *could* have occurred at an unspecified point, which then *would have* caused her to unknowingly issue a false report. Thus, like *Atchariyakornchai*, Arnold merely alleges that Carteris's demand "may have led" to a false report and increased costs for the City. U.S. Dist. LEXIS 168897, at *9. We similarly agree in this case that, because Arnold's allegations are speculative, Arnold failed to "allege[] facts sufficient to show that [s]he believed [her] employer was violating" or soon would violate the VFATA with respect to the issuance of tools. *Grant*, 912 F.3d at 201. We accordingly affirm the judgment of the trial court with respect to those allegations.

2. Uniform Ordering—Insufficiently Pleaded

Arnold next alleges that Keough's "request"/"demand[]" of Arnold to purchase navy blue uniforms for City staff would have similarly required her to violate Code § 8.01-216.3(A)(7) and (9). Arnold alleges that navy-blue uniforms "had been entirely removed from the Utility Department's inventory system" and replaced with a new uniform to comply with relevant DOT and OSHA safety regulations. Because these uniforms were erased from the system, "Arnold's compliance with Keough's request would have required Arnold to order the [uniforms] under a false designation."

The City argues that Arnold's allegations are "speculative" because there are no facts in her complaint to show either why she would have had to create a false report or why she could not add the uniforms back into the system. Arnold counters that details concerning the operation of the City's inventory system and Arnold's reasons for not adding the uniforms are not necessary to survive demurrer and should instead "be explored via discovery and deposition."

Although Arnold is correct that she need not explain the mechanics of the City's inventory system to satisfy notice-pleading requirements, her allegations nevertheless fail because the described conduct is not a violation of Code § 8.01-216.3.

To reiterate, a "central question" in any false claims case is "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'" *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86); *see also Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 173 (4th Cir. 2016) (affirming dismissal of FCA retaliation claim because plaintiff failed to establish that defendant's conduct "might result in *financial loss* to the Government" (emphasis added) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968))). Here, Arnold's compliance with the City's request to order navy blue uniforms could not have resulted in a fraudulent "call upon the [City] fisc" because the City

- 16 -

knew of and authorized those exact expenditures. In other words, the City was prepared to order the uniforms regardless of how they were categorized, so an incorrect designation would not "result in" additional "financial loss." *Carlson*, 657 F. App'x at 173.

To be sure, Code § 8.01-216.3(A)(9) applies broadly to *any* false record that is "material to any obligation to pay or transmit money or property to the Commonwealth." But the Code defines "material" as "having a natural tendency to *influence* . . . the payment or receipt of money or property." Code § 8.01-216.2 (emphasis added). Arnold ordering the uniforms under an incorrect designation could not have "influence[d]" any payment or receipt because, again, the City had already agreed to pay for the uniforms regardless of their designation.[9] Thus, while Arnold alleges a potential "false record or statement" in the form of an incorrect inventory designation, she fails to allege the record would be "*material* to an obligation to . . . transmit money or property" to the City. Code § 8.01-216.3 (emphasis added).

Lastly, Arnold alleges that ordering the uniforms "would have required Arnold to willfully violate City policy as well as DOT and OSHA safety regulations." Arnold may be able to seek redress for such grievances elsewhere, but claimants under the VFATA must allege more than mere "concern about regulatory noncompliance"—they must allege "specific . . . fraudulent conduct against the government" covered by Code § 8.01-216.3. *Grant*, 912 F.3d at 202. Here, for the reasons already discussed, Arnold has failed to do so.

In sum, Arnold's allegations concerning ordering uniforms do not state a predicate violation of Code § 8.01-216.3. We accordingly affirm the judgment of the trial court with respect to those allegations.

---

[9] Contrast this allegation with the storehouse classification allegations, discussed *infra*. That portion of the complaint alleges that an incorrect designation would have fraudulently caused new, unauthorized expenditures of City funds.

- 17 -

### 3. Employee Time Sheets—Sufficiently Pleaded

Arnold next alleges that she learned of City employees adding to and double-counting on their time sheets by including "call time" on top of actual "clock time." As a result, she alleges that City employees were "paid twice for the same hours while other employees were completing the same work without receiving additional pay." For its part, the City does not dispute that double-counting time would be a VFATA violation. It instead argues that Arnold states "[n]o predicate violation" of the VFATA because it believes the allegations merely establish that Arnold "suspected" there was an issue with the payroll. The City's argument is unavailing.

Code § 8.01-216.3(A)(1) sets forth the core prohibition against "knowingly present[ing]" a "false or fraudulent claim for payment or approval." Recall that Code § 8.01-216.2 defines "claim," in relevant part, as "any request or demand . . . for money or property . . . that . . . is presented to an officer, employee, or agent of the Commonwealth."[10]

Here, Arnold "learned that additional pay . . . was being added to employee timesheets without authorization." She thus directly alleges that employees made fraudulent "request[s] . . . for money," and we easily draw the additional inference that the time sheets were presented to the City "officer, employee, or agent" in charge of payroll. Code § 8.01-216.2. In short, City employees requesting compensation for work they did not do is a "false . . . claim," therefore

---

[10] Notably, the definition of "claim" specifically excludes "requests or demands for money or property that the Commonwealth *has paid* to an individual as compensation for employment with the Commonwealth." Code § 8.01-216.2 (emphasis added). In other words, the definitional carve-out exempts requests for money that the Commonwealth "has" *already* "paid to an individual as compensation"; it does not extend to requests by individuals for *future* compensation from the Commonwealth, which is what Arnold alleges here. *See* The Chicago Manual of Style ⁋ 5.136 (18th ed. 2024) (explaining that "*have* or *has*" is used "with the principal verb's past participle" to form the present-perfect tense, which "denotes an act, state, or condition that is now completed" or "a *past action* that comes up to and touches the present" (third emphasis added)).

Arnold has alleged an objectively reasonable belief that City employees were violating the VFATA.

Turning to the latter part of the *Grant* test, Arnold alleges that she emailed Operations Manager Larry Grant, her direct supervisor, as well as Assistant Superintendent of Wastewater David Speer "to prevent fraud" by "advis[ing] them about" the false time sheets. Arnold has thus sufficiently pleaded that she took action designed to stop a VFATA violation. *See Grant*, 912 F.3d at 202 (finding that plaintiff sufficiently alleged "efforts to stop" a potential FCA violation when he "raised concerns about [the violation] to management in an email"). We accordingly reverse the judgment of the trial court with respect to these allegations.

4. Storehouse Materials Classification—Sufficiently Pleaded

Arnold next alleges that Sid Lowe, Assistant Superintendent of Water Distribution, asked her to transfer a "large volume of damaged and obsolete materials purchased from third party vendors into the storehouses," and to falsely classify these materials as "stock." A "stock" designation represents that the materials are in "new condition," ready to be utilized by other departments. Arnold alleges that such a designation would have allowed Lowe's department to receive an $80,000 credit for the materials from the City. She argues that this would have violated Code § 8.01-216.3(A)(7) and (9) by forcing her to "make[] or deliver[] [a] receipt without completely knowing that the information on the receipt is true" and "cause[] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth."

To determine if Arnold has alleged a predicate VFATA violation, we again ask whether Arnold has alleged a false record "resulting in a 'call upon the [City] fisc'" or "financial loss" to the City. *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86); *Carlson*, 657 F. App'x at 173 (quoting *Neifert-White Co.*, 390 U.S. at 232). Unlike Arnold's uniform-ordering

- 19 -

allegations discussed *supra*—which described a transaction that was *already* authorized and would have resulted in uniforms simply having an incorrect designation—here, as alleged, the false classification would *cause* a transaction. In other words, while the uniform allegations contained nothing "resulting in," or causing, a "call upon the [City] fisc," here, Arnold has alleged that a false "stock" classification would trigger an $80,000 credit to Lowe's department.

On brief, the City does not dispute that a fraudulent internal "shift[ing]" of funds from one City department to another, such that the money could not be allocated elsewhere, would violate Code § 8.01-216.3; we therefore assume without deciding that it does.[11] Instead, the City once again argues that Arnold's allegations are "speculative," despite Arnold's concretely alleging that Lowe asked her "to classify the[] materials as 'stock'" and that such a classification would trigger a "credit for $80,000." For the same reasons discussed *supra* concerning the employee time sheets, we reject that argument.

Turning to whether Arnold "took action . . . designed to stop" the violation, *Grant*, 912 F.3d at 202, Arnold alleges that she "refused to create the documentation Lowe wanted," "reported Lowe's request to her supervisor," and "filed a formal grievance" against Lowe. Accordingly, Arnold has sufficiently alleged "other efforts to stop one or more violations" of the VFATA, Code § 8.01-216.8, and we reverse the judgment of the trial court with respect to these allegations.

### 5. Issuance of Water Meters—Insufficiently Pleaded

Lastly, Arnold alleges that Speer and Lowe "demanded that Arnold issue water meters while the City's financial system was down and therefore unable to properly log such a transaction." Under those circumstances, Arnold could only issue materials for "emergency

---

[11] For her part, Arnold asserts that the proposed classification would violate Code § 8.01-216.3 because it "would effectively and fraudulently transfer $80,000 of taxpayer money" to Lowe's department.

repairs," which required "proper documentation," but Speer and Lowe requested that Arnold issue the water meters without necessary documentation. As alleged, they sought to avoid documenting the transaction "in order to cover up Lowe's mishandling of a third-party contracting process (leading to its lapse), failure to appropriately recycle old meters," and "failure to order new meters through the appropriate channels in a timely manner." Had she provided the meters without documentation, "it would have resulted in an unanticipated shortage within the storehouse, causing delay in other City projects and further waste of City resources."

Like Arnold's tool-issuance allegations and *Atchariyakornchai*, discussed *supra*, these allegations are speculative. Arnold generally alleges that Lowe and Speer's request would have caused "unanticipated shortage" and led to "waste." But we are left to speculate as to the causal connection between these two things—in other words, it is unclear how the issuance of water meters would trigger a "call upon the [City] fisc." *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86). Without more, allegations of Lowe's department receiving meters and any resultant storehouse shortages, while perhaps showing a contravention of internal policy, do not state a false claim for payment or financial loss to the City. Like *Atchariyakornchai*, we can only infer that the issuance of the water meters "*may* have led" to financial loss down the line. U.S. Dist. LEXIS 168897, at *9 (emphasis added). Arnold has thus failed to state an objectively reasonable belief of a predicate VFATA violation, and we affirm the judgment of the trial court with respect to these allegations.

III. Arnold sufficiently pleaded the remaining elements to state a claim for retaliation under the VFATA.

The trial court granted the City's demurrer based solely on its finding that Arnold failed to satisfy the first element of a VFATA retaliation claim, engaging in protected activity. Having established that the trial court erred in that finding, the next question in our de novo review is whether Arnold sufficiently alleged the remaining two elements: that her employer knew about

her protected activity and that her employer took adverse action against her in response. *Grant*, 912 F.3d at 200; *accord Reed*, 923 F.3d at 764.

## A. Notice

Arnold has amply alleged that the City had notice of her protected actions. We have already identified some of the ways Arnold notified the City of perceived unlawful conduct, including emailing Grant and Speer about the time sheets and reporting Lowe to her supervisor after the requested storehouse misclassification. In addition, shortly after the final incident concerning the water meters, on June 21, 2021, Arnold "emailed Mary Keough" to inform her about the above-discussed instances. Then, on June 29, Arnold "submitted a grievance . . . detailing many of her experiences." Finally, the next day, Arnold "met with Keough," where they discussed the "City's actions" and Keough apologized to Arnold. Accordingly, Arnold has satisfied the second element to state a claim for retaliation. *See Grant*, 912 F.3d at 200.

## B. Adverse Action

The VFATA provides relief for an employee "if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because" the employee engages in protected activity. Code § 8.01-216.8. Turning again to on-point federal FCA caselaw, "[a]n employer undertakes a materially adverse action opening it to retaliation liability if it does something that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Grant*, 912 F.3d at 203 (quoting *Smith v. Clark/Smoot/Russell, AJV*, 796 F.3d 424, 434 (4th Cir. 2015)). "Termination from employment, 'following close on the heels of [a plaintiffs] [sic] numerous complaints, represents the ultimate action that an employer can take against a reasonable worker for whistleblowing.'" *United States ex rel. Fortunatè v. NDUTIME Youth &*

*Fam. Servs.*, No: 3:16cv653, 2020 U.S. Dist. LEXIS 166879, at *59 (E.D. Va. Sept. 11, 2020) (first alteration in original) (quoting *Grant*, 912 F.3d at 203).

Here, Arnold has sufficiently alleged adverse action. She alleges that the City "terminated" her on July 8, 2021 by purportedly "accepting" her "resignation." But, as alleged, Arnold did not resign; she merely told Keough, "I *would rather* resign my position than be fired for breaking written policies." (Emphasis added). This hypothetical indication of preference does not amount to a resignation. Moreover, even if it did, the resignation was no longer effective because Arnold told Keough on June 30, prior to the City "accepting" her resignation on July 8, "that she was rescinding her desire to resign," and Arnold further "memorialized this recension in writing on July 2, 2021." *See Bunting v. Willis*, 68 Va. (27 Gratt.) 144, 155 (1876) ("[A] prospective resignation may be withdrawn at any time before it is accepted . . . ."); *cf. Freeman v. Spencer Gifts, Inc.*, 333 F. Supp. 2d 1114, 1130-31 (D. Kan. 2004) (finding that employer "terminated" employee when it "accept[ed] her resignation" after employee had "withdraw[n]" it).

Additionally, Arnold has alleged that her termination was "close on the heels" of her "numerous complaints." *Grant*, 912 F.3d at 203. Arnold emailed Mary Keough on June 21, 2021, filed a formal grievance on June 29, and met with Keough on June 30, all for the purpose of informing the City of her numerous "experiences" with the "City's actions." Eight days after the June 30 meeting, the City terminated her. Accordingly, Arnold sufficiently pleaded adverse action by her employer, the third and final element necessary to allege retaliation under the VFATA.

## CONCLUSION

The trial court erred when it limited the scope of an employee's protected activity under Code § 8.01-216.8 to a pre-amendment definition, considering merely whether Arnold acted "in

- 23 -

furtherance of a VFATA action."  Under the newer "other efforts" prong, Arnold sufficiently pleaded, in part, retaliation under the VFATA.  We accordingly affirm in part and reverse in part the trial court's judgment sustaining the City's demurrer, and we remand for proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*